**CHARITY R. HODSON (F0487)**
ATTORNEY AT LAW
Plata Drive, Whispering Palms (Chalan Kiya)
P.O. Box 502607 CK
Saipan, MP 96950
Telephone: (670) 234-1615
Facsimile: (670) 234-5749
charity@chodsonlaw.com

*Attorney for Plaintiff Jose C. Mafnas*

FILED
Clerk
District Court

JUL 2 7 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

JOSE C. MAFNAS,

       Plaintiff,

       vs.

WILLIAM M. CASTRO, in his personal
capacity, and in his official capacity as the
Chief of Staff of the Office of the Governor,
DAVID DLG. ATALIG, in his personal
capacity, and in his official capacity as the
Secretary of Finance of the Department of
Finance, and THE COMMONWEALTH
OF THE NORTHERN MARIANA
ISLANDS,

       Defendants.

Civil Case No. CV 22-00009

**VERIFIED COMPLAINT**

    Plaintiff Jose C. Mafnas ("Plaintiff"), through Attorney Charity Hodson, complains against Defendants William M. Castro ("Defendant Castro"), in his personal capacity and in his official capacity as the Chief of Staff to the Office of the Governor, David DLG. Atalig, in his personal capacity and in his official capacity as the Secretary of Finance ("Secretary of

1

Finance") of the Department of Finance, and the Commonwealth of the Northern Mariana Islands (hereinafter, "Commonwealth Government") (collectively referred to as "Defendants").

## JURISDICTION AND VENUE

1.  Plaintiff invokes the jurisdiction of the Court under 28 U.S.C. §§ 1331 and 1343 and questions of federal constitution law.

2.  This is an action for injunctive relief and damages pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 based upon the continuing violations of Plaintiff's rights under the First Amendment and Fourteenth Amendment to the U.S. Constitution.

3.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

4.  The Court has supplemental jurisdiction over Plaintiff's other claims, which are based on CNMI law, under 28 U.S.C. § 1367.

5.  Venue in the United States District Court for the Northern Mariana Islands is proper under 28 U.S.C. § 1391(b)(1) because Plaintiff and Defendants reside in the Commonwealth of the Northern Mariana Islands and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims set forth in this complaint occurred in the District of the Northern Mariana Islands.

## PARTIES

6.  Plaintiff Jose C. Mafnas is a U.S. citizen and a resident of Saipan, Commonwealth of the Northern Marianas Islands (CNMI).

7. Defendant William M. Castro is a current resident of Saipan, CNMI, and is employed as the Chief of Staff to CNMI Governor Ralph Torres under the Office of the Governor.

8. Defendant David DLG. Atalig is the current Secretary of Finance of the CNMI Department of Finance, which is a government agency of the Commonwealth Government established within the executive branch.

9. Defendant Commonwealth Government is an "authority of the Commonwealth government," defined by 1 CMC § 9101(b) as an "agency," within which is the Department of Finance. Plaintiff hails the Commonwealth Government into this Court to serve as a proper party to bring before this Court should the Department of Finance through the Secretary be dismissed from this matter as an improper party because it is a non-jural entity or otherwise cannot be hailed into this Court. Should the Department of Finance be so dismissed from this matter, Plaintiff reserves the right to amend this Complaint if so approved by the Court so that the contents herein properly reflect claims against Defendant Commonwealth Government.

## FACTUAL ALLEGATIONS

10. Plaintiff began working for the Division of Customs in 1984 as a trainee and has worked his way up under the Department of Finance since that time.

11. From 1998 to 2003, Plaintiff served as the Director of Customs.

12. From 2003 to 2013, Plaintiff served as the Director of Administration under the Department of Finance.

3

13. Plaintiff has served the CNMI as the Director of Customs and Biosecurity from 2013 to July 21, 2022.

14. The Custom Director's regular job duties are to enforce Custom Rules and Regulations, as well as CNMI laws, Federal Laws, and the Personnel Regulations as they apply to the import and export of taxable goods to and from the CNMI.

15. Plaintiff is a civil service government employee.

16. Plaintiff's record of leadership and effective experience as the Director of Customs and Biosecurity has been exemplary.

17. Since Plaintiff took over the Customs Division nine years ago, collections of previously uncollected tax have climbed upward, by millions of dollars.

18. Plaintiff's leadership and spirit of teamwork with his Customs officers has resulted in a strong defense against the spread of methamphetamine in the CNMI, as evidenced by the multiple, consistent, and frequent reports of Customs intercepting methamphetamine, and leading to the arrests of numerous drug offenders throughout Plaintiff's service as the Director and with the work of his team.

19. In November 2015, U.S. Delegate Gregorio Kilili C. Sablan presented a congressional commendation to the CNMI Division of Customs, through Plaintiff and his staff, recognizing their diligent work in fighting the war on methamphetamine in the CNMI.

20. Plaintiff has performed his duties as the Director of Customs and Biosecurity with diligence and effectiveness over his many years of service, as is evidenced by his

record of increasing government revenue through collection efforts and eliminating drugs in the community in coordination with his team.

21. On the afternoon of July 21, 2022, Plaintiff was given a Memorandum by the Secretary of Finance which purported to "reassign" Plaintiff to the Department of Commerce as a "Director of Export, Importation, & Public Outreach" to report to the Secretary of Commerce.

22. The Secretary of Finance's Memorandum stated that the new position would be effective the following day of the date of Memorandum and would be for a term of six months, unless otherwise determined by the Secretary of Finance or the Secretary of Commerce.

23. The Department of Commerce is not a division of the Department of Finance.

24. Instead, the Department of Commerce is a separate government agency of the Commonwealth Government established within the executive branch and headed by a Director of Commerce.

25. The position of "Director of Export, Importation, & Public Outreach" is not a designated position under the civil service.

26. Under 1 CMC § 8312, no person can be employed in a position in the civil service under any title which has not been approved by the Civil Service Commission.

27. All positions within the civil service must be classified within a position classification plan, and there is a Civil Service System Classification and Compensation Manual that provides for the classification new positions.

28. When a new position is opened under the civil service, the position should be announced and published for a certain amount of time to locate candidates.

29. As of the issuance of the July 21, 2022 Memorandum, the Civil Service Commission had not approved the civil service of "Director of Export, Importation, & Public Outreach," although upon information and belief, the Secretary of Commerce did reach out to the Office of Personnel Management to create the position after Plaintiff filed a civil suit in the CNMI Superior Court on July 24, 2022, with substantially the same factual allegations as alleged herein, which suit Plaintiff voluntarily dismissed without prejudice on July 27, 2022, with the CNMI Superior Court's acceptance of the voluntary dismissal without prejudice on the same day. A true and correct copy of the Request to Establish Director of Export, Importation & Public Outreach from the Secretary of Commerce to the Office of Personnel Management dated July 21, 2022, but not received by the Office of Personnel Management until July 25, 2022, is filed herewith as Exhibit 4.

30. Plaintiff's previous civil suit in the CNMI Superior Court did not directly allege violation of 42 U.S.C. § 1983 nor did it include Defendant Castro.

31. The Secretary of Finance's Order of Reassignment begins with two paragraphs recognizing Plaintiff's productive and competent leadership, his value as a member of the Department of Finance management team, and his outstanding performance and demonstrated success in core areas of relentless enforcement and historically high collections of taxes in the CNMI, but then "summons" Plaintiff's leadership to the Department of Commerce to address compelling opportunities there.

32. Upon information and belief, the "compelling opportunity" of serving as the Director of Export, Importation & Public Outreach is a sham.

33. On July 21, 2022, Plaintiff contacted the Office of Personnel Management for information on this position and learned that no such position exists.

34. The Secretary of Finance's Order did not inform Plaintiff of any right to appeal the decision, to file a grievance, or any other indicia of due process.

35. The Order does not advise Plaintiff of remedies or right to appeal, or right to file a grievance, nor does it mention administrative exhaustion of remedies at all.

36. The Personnel Service Appeals System under Subpart D of the Civil Service Commission Personnel Service System Rules and Regulations provides an administrative process for employees suffering from suspension, furloughs, separations, and demotions not resulting from reduction-in-force. NMIAC § 10-20.2-255.

37. Adverse actions taken under Subpart D require appointing authorities to observe certain procedural requirements, including a letter of proposed adverse action that has been reviewed by the Personnel Office and the Attorney General, or their designees, before issuance. NMIAC § 10-20.2-257(m).

38. An employee suffering from an adverse action under Subpart D must be given at least thirty days' notice of the proposed adverse action and the employee has a right to answer and if at all practicable, the employee must be kept on active duty in the regular position during the notice period. NMIAC § 10-20.2-257(m)(3)-(5).

39. Additionally, the employee must be given a written decision before the adverse decision is effected, stating the reasons for the decision and advising the employee of appeal rights. NMIAC § 10-20.2-257(m)(6)-(7).

40. Under Subpart D, the adverse action procedural system provides for the management official's letter of proposed adverse action, the employee's answer and/or presentation of evidence, the management official's letter of decision, the employee's written appeal to the Civil Service Commission, a Civil Service Commission hearing, a Civil Service Commission decision, at which point after the administrative remedies have been exhausted, the employee then has the option of proceeding to the NMI Superior Court for judicial review, which could then be appealed to the NMI Supreme Court.

41. In this case, the Secretary of Finance's Order does not reference any suspension, furlough, separation, and demotion not resulting from reduction-in-force which would allow Plaintiff to avail of any procedural due process under Subpart D of the Civil Service Commission Personnel Service System Rules and Regulations.

42. Similarly, Subpart F of the Civil Service Commission Personnel Service System Rules and Regulations provides an administrative process for employees to appeal a decision to take adverse action resulting from reduction-in-force procedures, or an "unsatisfactory" or "satisfactory" performance rating. NMIAC § 10-20.2-275.

43. An employee's rights under this process cannot be denied and include the employee's right to a hearing, the right to be free from an employer's reprisal or interference, the right to representation, and the right to time to file an appeal to be

heard by the Civil Service Commission, wherein the employee has the opportunity to present witnesses and evidence. NMIAC §§ 10-20.2-276 to 279.

44. If the Civil Service Commission finds any regulatory or procedural defect in the appointing authority's decision to take adverse action, the employee would be entitled to reversal of the action. NMIAC § 10-20.2-280.

45. In this case, the Secretary of Finance's Order does not reference any reduction-in-force procedures, or an "unsatisfactory" or "satisfactory" performance rating which would allow Plaintiff to avail of any procedural due process under Subpart F of the Civil Service Commission Personnel Service System Rules and Regulations.

46. Finally, Subpart G of the Civil Service Commission Personnel Service System Rules and Regulations provides a grievance procedure to cover all matters of concern or dissatisfaction to an eligible employee *unless* the grievance is excepted by an adverse action appealed under Part 200, Subpart D, a fitness-for-duty examination, the content of published government policy, non-selection for appointment, promotion, or transfer from a group of properly ranked and certified candidates, non-adoption of a suggestion or disapproval of a merit increase, performance award, or other kind of honorary discretionary award, and an employee who is serving on probationary status.

47. The Secretary of Finance's Order of Reassignment is a de facto adverse action, which is excepted under any grievance procedure under Subpart G.

48. The purported position of Director of Export, Importation & Public Outreach is not an existing position for an employee under the Civil Service System and therefore

9

any statement by the Secretary of Finance that this fictional position does not change Plaintiff's civil service status is not supported by any law, regulation, or fact.

49. The Order effectively removed Plaintiff from his position as Director, and placed him in a fictional and illegal position under a separate government agency, reportable to a separate appointing authority, yet allows any decisions regarding Plaintiff's future employment to be made at the whim of either the Secretary of Finance or the Secretary of Commerce.

50. The Secretary of Finance's statement that the position is for a six-month term contradicts his statement that the new position will not result in any losses or benefits, particularly with regard to Plaintiff's protected civil service status and is further without legal basis as the Secretary of Finance has no authority to create a new civil service position and then transfer an employee into it without any notice.

51. Plaintiff is entitled to the protections given to him by CNMI law as a civil service employee.

52. Additionally, Plaintiff has a constitutionally protected property interest in his continued employment as a public employee.

53. The Secretary of Finance's Order is a demotion and an adverse action taken against Plaintiff with no recognition of his right to due process and is a violation of Plaintiff's constitutional rights.

54. Furthermore, the Secretary of Finance's Order to effectively reclassify Plaintiff's employment and subdelegate an employment position that does not exist to another government agency is ultra vires and void.

55. Because the Secretary of Finance's Order an illegal and ultra vires act, there is no administrative remedy to exhaust where the action taken by the appointing authority is not an action contemplated for or addressed with the Civil Service Commission Personnel Service System Rules and Regulations.

56. Finally, it is clear here that the purported reassignment was not for any legal purpose.

57. Plaintiff has no administrative remedies to exhaust.

58. It is no secret that Plaintiff is a supporter of the independent Palacios-Apatang gubernatorial ticket for the CNMI November 2022 General Election, which ticket is running against the incumbent governor.

59. In the recent months leading up to his effective termination, Plaintiff has been publicly supporting the incumbent governor's gubernatorial opponent outside of the work place by appearing at events, fundraisers, and roadside wavings.

60. Plaintiff's constitutional right to vote freely and to associate as he sees fit has been under fire for months since his public support of the Governor's opponent.

61. On or about May 22, 2022, Plaintiff's niece, Rowena Ogo, sent a message to Defendant Castro regarding talk from Defendant Castro about terminating Plaintiff's employment.

62. Defendant Castro replied:

"Next time your uncle fuhks (*sic*) with my Governor I'll fire him myself
Sorry
I don't report to you
U need to decide where ur loyalties lie

11

63. A true and correct copy of the messages is filed herewith as Exhibit 1 and incorporated herein by reference.

64. Upon information and belief, Defendant Castro's reference to "my Governor" is the incumbent CNMI Governor, Ralph Torres, for whom Defendant Castro is employed as his Chief of Staff.

65. Upon information and belief, the "uncle" referenced in the message is Plaintiff.

66. Defendant Castro also stated:

"I'm not here to make friends or run for office
I'm here to protect n secure my Governor
For the record
I don't talk shit about anyone
I call it like I see it
If he's with the Gov
In terms of the Vision...
Then we're all Gud."

67. The "he" referenced in the message is Plaintiff.

68. A true and correct copy of the messages is filed herewith as Exhibit 2 and incorporated herein by reference.

69. When Rowena Ogo questioned the ethics of Defendant Castro's comment, Defendant Castro replied:

"Agreed
I must be more careful
But there's no ethical conflict when the chief of staff decides if someone is unwilling or incapable of executing the execution direction
Simple
This is not my first rodeo
Exhibit 2.

70. When Plaintiff directly engaged the incumbent governor's Chief of Staff in a written communication to address these comments on or about May 22, 2022, the Chief of

Staff replied: "Director, I've been a winner and a loser. But I've never lost a civil service battle." A true and correct copy of the messages is filed herewith as Exhibit 3 and incorporated herein by reference.

71. The same day Plaintiff was given the Secretary of Finance's adverse order, an Officer 1 was appointed as the Acting Director of Customs, bypassing several experienced management officers at Customs.

72. The now-Acting Director of Customs is a close relative of the incumbent Governor's running mate for the November 2022 gubernatorial election.

73. Plaintiff expects that the continued muzzling of his First Amendment rights and the retaliation against Plaintiff's assertions of his freedom to vote as he chooses and not as he is told will continue into the illegally assigned position at the Department of Commerce.

74. Since his reassignment, Plaintiff sits in an office at the Department of Commerce, in a position that has not been classified as a Civil Service position, at a government agency that was not prepared to receive him as an employee.

75. Upon information and belief, this was done at the order of Defendant Castro, as the Chief of Staff to the incumbent Governor, to Plaintiff's then-supervisor, the Secretary of Finance.

76. The Order was given outside the scope of the Director of Finance's authority, and was done without notice or an opportunity to be heard to Plaintiff.

77. The Order is cleverly written to purport to give Plaintiff the same benefits and compensation in the new fictional position as Plaintiff received as the Director of

13

Customs and Biosecurity, in order to cut off any allegation that the reassignment is actually an adverse action, entitling Plaintiff to the procedural protections afforded by the Personnel System Service and Regulations and the due process protections of the U.S. and NMI Constitutions.

78. The Order is in direct retaliation for Plaintiff's failure to follow the executive direction of supporting the incumbent Governor.

79. These threats by the Chief of Staff and the retaliatory reassignment of Plaintiff occurred shortly Plaintiff publicly expressed his support for the Governor's opponent.

80. In line with the promises made by the Chief of Staff that if Plaintiff continued with his actions and continued to "fuhk" with the Governor (as articulated by Defendant Castro), Defendant Castro would see to it that Plaintiff would be fired, Defendant did see to it that Plaintiff's employment was adversely affected, if not actually terminated.

81. In no uncertain terms, Defendant Castro made it clear that Plaintiff's employment would only be "all gud" as long as Plaintiff was "with the Gov." And if Plaintiff continued to be unwilling to execute the executive direction of supporting the incumbent Governor, then Plaintiff would be subject to actions to terminate him, caused by Defendant Castro and at his order.

14

**FIRST CAUSE OF ACTION (DEFENDANT SECRETARY OF FINANCE AND DEFENDANT CASTRO, IN THEIR PERSONAL CAPACITIES)**
*VIOLATIONS OF RIGHT TO DUE PROCESS OF LAW, RIGHT TO FREEDOM OF SPEECH, RIGHT TO FREEDOM OF ASSOCIATION; 42 U.S.C. § 1983*

82. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

83. Defendant Secretary of Finance at all times relevant to this action was acting under color of state law, or CNMI law.

84. Defendant Castro at all times relevant to this action was acting under color of state law, or CNMI law.

85. Defendant Secretary of Finance owed Plaintiff a duty under the due process clauses of the First and Fourteenth Amendments to the U.S. Constitution and Article I, Section 5 of the CNMI Constitution.

86. Defendant Secretary of Finance intentionally, unlawfully, and maliciously deprived Plaintiff of his property interest in continued employment without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

87. Defendant Castro intentionally, unlawfully, and maliciously participated in and/or caused the series of steps to deprive Plaintiff of his property interest in continued employment without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

88. Defendant Secretary of Finance's and Defendant Castro's violation of Plaintiff's rights were of constitutional magnitude which were clearly established rights at the time of the issuance of the Secretary of Finance's July 21, 2022 Memorandum.

89. Defendant Secretary of Finance's violation of Plaintiff's rights was also a violation of CNMI law as clearly established by CNMI statutes which only grant the authority to create civil service positions to the Civil Service Commission and of CNMI law prohibiting political coercion.

90. At all times relevant hereto, Defendant Secretary of Finance and Defendant Castro knew that their conduct was unlawful and it would have been clear to any reasonable official that CNMI law prohibited their actions in depriving Plaintiff of his employment and in illegally attempting to create a new civil service position.

91. Defendant Secretary of Finance and Defendant Castro discriminated and retaliated against Plaintiff for exercising his constitutional right to freedom of association with a different political gubernatorial ticket than the incumbent governor.

92. Defendant Secretary of Finance's engaged in patronage by issuing his decision to "reassign" Plaintiff which was an adverse employment action because of Plaintiff's political association.

93. Defendant Secretary of Finance's and Defendant Castro's actions were motivated by evil motive or intent, or involved reckless or callous indifference to the rights of Plaintiff.

94. Plaintiff has been damaged by Defendant Secretary of Finance's and Defendant Castor's actions in an amount to be determined according to proof and Plaintiff

seeks compensatory and punitive damages as well as reasonable attorney's fees and costs of suit under this cause of action.

## SECOND CAUSE OF ACTION (DEFENDANT SECRETARY OF FINANCE AND DEFENDANT CASTRO, IN THEIR OFFICIAL CAPACITIES)
*RIGHT TO DUE PROCESS OF LAW, RIGHT TO FREEDOM OF SPEECH, RIGHT TO FREEDOM OF ASSOCIATION; 42 U.S.C. § 1983*

95. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

96. Defendant Secretary of Finance at all times relevant to this action was acting under color of state law, or CNMI law.

97. Defendant Castro at all times relevant to this action was acting under color of state law, or CNMI law.

98. Defendant Secretary of Finance and Defendant Castro intentionally, unlawfully, and maliciously deprived Plaintiff of his property interest in continued employment without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

99. Defendant Castro intentionally, unlawfully, and maliciously participated in and/or caused the series of steps to deprive Plaintiff of his property interest in continued employment without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

100.   Defendant Secretary of Finance's and Defendant Castor's violation of Plaintiff's rights were of constitutional magnitude which was a clearly established right at the time of the issuance of the Secretary of Finance's July 21, 2022 Memorandum.

17

101.   Defendant Secretary of Finance's and Defendant Castro's violation of Plaintiff's rights was also a violation of CNMI law as clearly established by CNMI statutes which only grant the authority to create civil service positions to the Civil Service Commission and of CNMI law prohibiting political coercion.

102.   At all times relevant hereto, Defendant Secretary of Finance and Defendant Castro knew their conduct was unlawful and it would have been clear to any reasonable official that the Constitution and CNMI law prohibited their actions in depriving Plaintiff of his employment and in illegally attempting to create a new civil service position.

103.   Defendant Secretary of Finance and Defendant Castro discriminated and retaliated against Plaintiff for exercising his constitutional right to freedom of association with a different political gubernatorial ticket than the incumbent governor.

104.   Defendant Secretary of Finance engaged in patronage by issuing his decision to "reassign" Plaintiff which was an adverse employment action because of Plaintiff's political association.

105.   Plaintiff therefore seeks only injunctive relief against Defendant Secretary of Finance in his official capacity, and against Defendant Castro in his official capacity, as below discussed in the injunctive relief section of this complaint under this cause of action.

**THIRD CAUSE OF ACTION (DEFENDANT SECRETARY OF FINANCE IN HIS OFFICIAL CAPACITY, DEFENDANT CASTRO IN HIS OFFICIAL CAPACITY, AND COMMONWEALTH GOVERNMENT)**
*DECLARATORY JUDGMENT, ALTERNATIVELY*

106.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

107.   An actual controversy exists in the CNMI between Plaintiff and/or Defendant Castro and/or the Secretary of Finance and/or the Commonwealth Government as to the order of Defendant Castro causing Defendant Secretary of Finance's ultra vires and illegal decision to take a de facto adverse action against Plaintiff's civil service employment without due process under the authority of the Commonwealth Government.

108.   Plaintiff has been injured by the de facto adverse decision issued by the Secretary of Finance against him under the authority of the Commonwealth Government because it is a loss of employment as the Director of Customs and Biosecurity, which is a position Plaintiff has held and enjoyed for the past nine years to the benefit of the Commonwealth.

109.   Plaintiff has been injured by Defendants' violation of his constitutional protected property interest in continued employment as a public employee.

110.   Plaintiff has been irreparably injured by Defendants' violations of his constitutional right to due process and of his right to be free from political influence and coercion.

19

111.   The Secretary of Finance had no authority to reclassify Plaintiff and to designate a position which has no official record nor to purport to employ a person in a civil service under an unapproved position.

112.   Defendants violated Plaintiff's right to equal opportunity under the Commonwealth Civil Service Act because the adverse decision was based on retaliation against Plaintiff's political affiliation.

113.   Defendants violated Plaintiff's right to reasonable job security under the Commonwealth Civil Service Act.

114.   Defendants violated Plaintiff's right to a fair and reasonable grievance procedure under the Commonwealth Civil Service Act and deliberately attempted to foreclose Plaintiff of any administrative redress.

115.   Defendants violated the provisions of the Civil Service Act which provide for a career service which is intended to retain the best qualified civil servants on merit who are entitled to hold their positions free from coercion, discrimination, reprisal or political influence.

116.   Defendants violated the provisions of the Civil Service Act by attempting to demote and reclassify a civil service employee who has a long history of providing impartial service according to the dictates of ethics and morality.

117.   Defendant Secretary of Finance and Defendant Castro, under the purported authority of the Commonwealth Government, discriminated against Plaintiff on account of his political affiliation in violation 1 CMC § 8141.

118.    Defendant Castro and Defendant Secretary of Finance unlawfully used their official authority to influence or coerce the political action of Plaintiff at the behest of Defendant Castro in violation of 1 CMC § 8142.

119.    There is an adequate remedy at law in that this Court can order injunctive relief to restore Plaintiff to his position or otherwise declare the July 21, 2022 Memorandum to be ultra vires and void.

**FOURTH CAUSE OF ACTION (DEFENDANT SECRETARY OF FINANCE AND DEFENDANT CASTRO, IN THEIR PERSONAL AND OFFICIAL CAPACITIES)**
*POLITICAL COERCION; 1 CMC § 8153*

120.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

121.    Defendant Castro and Defendant Secretary of Finance caused and/or threatened to be caused a demotion in rank or civil service classification or position of Plaintiff with intent to discourage or encourage such government employee to support a candidate for public office and/or a political party.

122.    Plaintiff has suffered injury to his person and property in an amount to be determined according to proof as a result of Defendant Castro and Defendant Secretary of Finance's political coercion.

123.    Plaintiff seeks full damages, both tangible and intangible as a result of the coercion, attorney's fees, and court costs for this cause of action.

**FIFTH CAUSE OF ACTION**
*INJUNCTIVE RELIEF (DEFENDANT SECRETARY OF FINANCE, IN HIS OFFICIAL AND PERSONAL CAPACITY)*

124.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

125.   The Secretary of Finance's de facto adverse decision and Order to Plaintiff was not in accordance with law.

126.   Plaintiff seeks an injunction from this Court preventing the Defendant Secretary of Finance from removing Plaintiff from his position as Director of Customs and Biosecurity or otherwise reinstating him.

**PRAYER FOR RELIEF**

Accordingly, Plaintiff prays for judgment against Defendants and requests relief as follows:

A. That this Court issue a judgment against Defendant Secretary of Finance and Defendant Castro for violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983;

B. That this Court issue a declaratory judgment that Defendants' actions as alleged herein violate Plaintiff's rights under the United States and NMI Constitutions and specifically that the Secretary of Finance's Order is ultra vires and void;

C. That this Court issue judgment against Defendants Castro and Secretary of Finance for political coercion in violation of CNMI law;

D. That the Court issue an injunction to prevent Defendant Secretary of Finance from removing Mr. Mafnas from his position as Director of Customs and Biosecurity or to otherwise reinstate pending a decision on the merits;

E.  For reasonable attorney's fees and costs;

F.  For compensatory damages;

G.  For punitive damages;

H.  For damages in an amount to be determined according to proof;

I.  For such other relief as this Court believes justice requires.

Respectfully submitted this 27th day of July, 2022.

*/s/ Charity R. Hodson*
By: Charity R. Hodson (F0487)
Attorney for Plaintiff

## VERIFICATION

I, Jose C. Mafnas, hereby attest and declare that I have reviewed the foregoing document, and I have personal knowledge of the factual statements contained in the Verified Complaint. I verify that these statements are true and correct and that the exhibits are true and correct copies of communications as I received them.

Declared under the penalty of perjury of the laws of the United States of America on this 12th day of July, 2022.

Jose C. Mafnas
Plaintiff

23