**CHARITY R. HODSON (F0487)**
ATTORNEY AT LAW
Plata Drive, Whispering Palms (Chalan Kiya)
P.O. Box 502607 CK
Saipan, MP 96950
Telephone: (670) 234-1615
Facsimile: (670) 234-5749
charity@chodsonlaw.com

*Attorney for Plaintiff Jose C. Mafnas*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **JOSE C. MAFNAS,** | **Civil Action No. 22-00009** |
| **Plaintiff,** | |
| **vs.** | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| **WILLIAM M. CASTRO, in his personal capacity, and in his official capacity as the Chief of Staff of the Office of the Governor, DAVID DLG. ATALIG, in his personal capacity, and in his official capacity as the Secretary of Finance of the Department of Finance, and THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,** | Hearing Date: Hearing Time: Chief Judge Ramona V. Manglona |
| **Defendants.** | |

## Table of Contents

I.    INTRODUCTION ............................................................................................................. 1

II.   LEGAL STANDARD....................................................................................................... 4

III.  ARGUMENT.................................................................................................................... 5

   A.   Fair Chance of Success on the Merits. .................................................................... 5

      1.   Constitutional Violations Brought Under 42 U.S.C. § 1983 ................................ 5

a.    Preliminary Issues Regarding Ability to be Sued, Immunity, and Exhaustion of State or Administrative Remedies6

    i.    Ability to be Sued ................................................................................................. 6

    ii.    Immunity ............................................................................................................. 6

    iii.    Exhaustion of Administrative Remedies and State Tort Claim Procedures. ........................................ 7

b.    Procedural Due Process .......................................................................................... 8

c.    Constitutionally Protected Freedom of Association/Assembly. ........................................... 12

2.    Declaratory Judgment. .......................................................................................... 13

a.    The Secretary of Finance's Decision was a De Facto Adverse Decision that Deprived Plaintiff of Due Process. . 14

b.    The Secretary of Finance's Decision was Ultra Vires and Void. .......................................... 17

c.    The Secretary of Finance's Decision was a Violation of Plaintiff's Equal Opportunity Rights under the Civil

Service Act because it was Based on Political Affiliation. ...................................................... 18

3.    Cause of Action for Political Coercion ......................................................................... 19

B.    Irreparable Harm. ................................................................................................... 20

C.    The Balance of Equities Tips in Plaintiff's Favor. ............................................................. 22

D. An Injunction is in the Public Interest. ........................................................................... 23

E.    Alternative combination of factors. .............................................................................. 24

IV. SECURITY.............................................................................................................. 24

V.  CONCLUSION........................................................................................................ 24

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Authorities**

**Cases**

*Allman v. Padilla*, 979 F. Supp. 2d 205 (D.P.R. 2013) .......................................................................... 22

*Amalgamated Transit Union, Loc. 1277, AFL-CIO v. Sunline Transit Agency*, 663 F. Supp. 1560 (C.D. Cal. 1987) ................... 21

*Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) .......................................................... 21

*Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350 (9th Cir. 1981) ............................................................ 11

*Branti v. Finkel*, 445 U.S. 507 (1980) ...................................................................................... 12

*Burns v. Reed*, 500 U.S. 478 (1991) ......................................................................................... 7

*Camacho v. CNMI Dept. of Corrections*, 18-CV-00008, 2019 WL 392376 (D.N. Mar. Is. Jan. 31, 2019) ....................... 6

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ................................................................... 9

*Cmmw. Utilities Corp. v. Johnson*, 218 F. Supp. 3d 1136 (D.N. Mar. Is. 2016) .................................... 4, 23, 24

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019) ................................................................... 21

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) ......................................................................... 25

*Deleon Guerrero v. CNMI State Bd. of Educ.*, 18-CV-00006, 2018 WL 2437582 (D.N. Mar. Is. May 30, 2018) .................. 8

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................ 21

*Fry v. Melaragno*, 939 F.2d 832 (9th Cir. 1991) ............................................................................. 6

*Garmon v. Cty. of Los Angeles*, 828 F.3d 837 (9th Cir. 2016) ................................................................ 7

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417 (9th Cir. 1991) .................................................................. 4, 5

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2nd Cir.1953) ....................................................... 4

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................................................. 7

*Hofschneider v. Demapan-Castro*, CV-04-0022-ARM, 2005 WL 817710 (D.N. Mar. Is. Apr. 11, 2005) ........................... 9

*Imperial P. Intl. (CNMI) LLC v. Cmmw. Casino Commn.*, 19-CV-00014, 2019 WL 3557896 (D.N. Mar. Is. Aug. 6, 2019) .. 20, 21

*Johnson v. Brown*, 567 F. Supp. 3d 1230 (D. Or. 2021) ....................................................................... 21

*Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) ............................................................................. 11

*Kizer v. Shelby County Government*, 649 F.3d 462 (6th Cir. 2011) ............................................................ 9

*Martinez v. California*, 444 U.S. 277 (1980) ................................................................................ 11

*Merritt v. Mackey,* 827 F.2d 1368 (9th Cir. 1987) ........................................................................ 7

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003).......................................................................... 6

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ................................................................... 8

*Monroe v. Pape*, 365 U.S. 167 (1961) ......................................................................................... 8

*Nat'l Basketball Ass'n v. SDC Basketball Club*, 815 F.2d 562 (9th Cir. 1987) ....................... 13

*Patsy v. Bd. of Regents*, 457 U.S. 496 (1982) ............................................................................. 8

*Portman v. Cnty. of Santa Clara*, 995 F.2d 898 (9th Cir. 1993) ............................................... 8

*Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175 (9th Cir. 2007) ........................ 11

*Procunier v. Navarette*, 434 U.S. 555 (1978) ............................................................................. 6

*Republic of Philippines v. Marcos*, 862 F.2d 1355 (9th Cir.1988)............................................ 5

*RNV Constr. v. GPPC, Inc.,* 2021 MP 13 ................................................................................. 18

*Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776 (9th Cir. 2018)............................................. 11

*Sanders Cty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741 (9th Cir. 2012) .................. 22

*Seattle Audubon Soc'y v. Mosley*, 80 F.3d 1401 (9th Cir. 1996) ............................................. 13

*Sierra On–Line v. Phoenix Software*, 739 F.2d 1415 (9th Cir. 1984) ....................................... 4

*Tower v. Glover*, 467 U.S. 914 (1984).......................................................................................... 6

*Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968 (9th Cir. 2002)................................. 8

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ..................................... 4, 20

## Statutes

1 CMC § 8102 ..................................................................................................................... 9, 13, 19

1 CMC § 8141 ........................................................................................................................ 14, 19

1 CMC § 8152 ............................................................................................................................. 20

1 CMC § 8153 ............................................................................................................................. 20

28 U.S.C. § 2201......................................................................................................................... 13

42 U.S.C. § 1983.......................................................................................................................... 5

7 CMC § 2202 .............................................................................................................................. 8

8 CMC § 8102 ........................................................................................................................ 19

8 CMC § 8132 ........................................................................................................................ 17

*Alvarez v. Seahorse Inc.,* 16-CV-00014, 2017 WL 3973035 (D.N. Mar. Is. Sept. 8, 2017) .......... 13

**Other Authorities**

Dillwyn, George; *Occasional Reflections, Offered Principally for the Use of Schools,* (Burlington, New Jersey, 1815). .............. 7

**Rules**

FED. R. CIV. P. 65 .................................................................................................................... 27

**Regulations**

NMIAC § 10-20.2- 279 .......................................................................................................... 18

NMIAC § 10-20.2-245 ........................................................................................................... 21

NMIAC § 10-20.2-255 ........................................................................................................... 17

NMIAC § 10-20.2-257 ........................................................................................................... 17

NMIAC § 10-20.2-275 ........................................................................................................... 18

NMIAC § 10-20.2-276 ........................................................................................................... 18

NMIAC § 10-20.2-277 ........................................................................................................... 18

NMIAC § 10-20.2-278 ........................................................................................................... 18

NMIAC § 10-20.2-280 ........................................................................................................... 18

NMIAC § 10-20.2-285 ........................................................................................................... 19

**Constitutional Provisions**

NMI CONST. art. 1 ................................................................................................................. 15

NMI CONST. art. 1 § .............................................................................................................. 11

U.S. Const. amend. I .............................................................................................................. 15

U.S. Const. amend. XIV ......................................................................................................... 11

# I.   INTRODUCTION[1]

"Next time your uncle fuhks with my Governor I'll fire him myself
...
U need to decide where ur loyalties lie"
Defendant William M. Castro, Ex. 1, Verified Complaint.
"If he's with the Gov
In terms of the Vision...
Then we're all Gud
...
[T]here's no ethical conflict when the chief of staff decides if someone is unwilling or incapable of executing the executive direction
Simple
This is not my first rodeo"
Defendant William M. Castro, Ex. 2, Verified Complaint.

"Director, I've been a winner and a loser. But I've never lost a civil service battle."
Defendant William M. Castro, Ex. 3, Verified Complaint.

These are the words from the Chief of Staff of the CNMI Governor, ringing in Plaintiff's head as he sits in an office at the Department of Commerce, in a position that has not been classified as a Civil Service position, at a government agency that was not prepared to receive him as an employee. A week ago, Plaintiff would have been doing his job as the Director of Customs and Biosecurity. But on July 21, 2022, the Secretary of Finance issued an order purporting to reassign Plaintiff to a position within the Department of Commerce, another government agency, which position had not been created or classified by the Civil Service Commission, in violation of CNMI law.

---

[1] For purposes of brevity, Plaintiff incorporates by reference the facts as alleged in his Verified Complaint, and Exhibits 1-4 filed therewith and incorporated by reference into the Verified Complaint. The facts in the Introduction are an abbreviated version of the factual allegations in the Verified Complaint.

Upon information and belief, this was done at the order of Defendant William M. Castro, as the Chief of Staff to the incumbent Governor, to Plaintiff's then-supervisor, the Secretary of Finance. The Order was given outside the scope of the Director of Finance's authority, and was done without notice or an opportunity to be heard to Plaintiff. The Order is cleverly written to purport to give Plaintiff the same benefits and compensation in the new fictional position as Plaintiff received as the Director of Customs and Biosecurity, in order to cut off any allegation that the reassignment is actually an adverse action, entitling Plaintiff to the procedural protections afforded by the Civil Service Personnel System Service and Regulations and the due process protections of the U.S. and NMI Constitutions. The Order is in direct retaliation for Plaintiff's failure to follow the executive directive of supporting the incumbent Governor.

It has been no secret that Plaintiff is a supporter of the independent Palacios-Apatang gubernatorial ticket for the CNMI November 2022 General Election, which ticket is running against the incumbent governor. Plaintiff has been publicly supporting the incumbent governor's gubernatorial opponent outside of the workplace by appearing at events, fundraisers, and roadside wavings in the recent months of 2022. These threats by the Chief of Staff and the retaliatory reassignment of Plaintiff occurred shortly thereafter, in line with the promises made by the Chief of Staff that if Plaintiff continued with his actions and continued to "fuhk" with the Governor (as articulated by Defendant Castro), Defendant Castro would see to it that Plaintiff would be fired. In no uncertain terms, Defendant Castro made it clear that Plaintiff's employment would only be "all gud" as long as Plaintiff was "with the Gov." And if Plaintiff continued to be unwilling to execute the executive direction of supporting the incumbent

Governor, then Plaintiff would be subject to actions to terminate him, caused by Defendant Castro and at his order.

But the Commonwealth and the United States of America are not founded on "the executive direction" set forth by Defendant Castro. Instead, the American republic was founded on a set of beliefs, among them the belief that all people have fundamental rights, including freedom of speech, freedom of assembly, and due process of law. Plaintiff is entitled to these fundamental rights and requests the Court to enforce his fundamental rights and grant him relief.

Plaintiff seeks the extraordinary remedy of a temporary restraining order and preliminary injunction for the extraordinary and blatant violations of his constitutional rights of due process and of freedom of speech and assembly committed by Defendants Castro and the Secretary of Finance in removing him from his civil service position as the Director of Customs and Biosecurity to a made-up position within the Department of Commerce which is not a properly classified civil service position. Plaintiff requests the Court to maintain the status quo that was in place before his reassignment and order that the Defendant Secretary of Commerce be restrained from effectuating his July 21, 2022 Memorandum until further order of the Court.

The relief requested by Plaintiff is appropriate, necessary, and supported by U.S. Supreme Court jurisprudence. The loss of Plaintiff's First Amendment freedoms, for even the minimal amount of time from July 21, 2022, to the date of this filing, unquestionably constitute irreparable injury, as below set forth in detail. Plaintiff's First Amendment rights are being

chilled with every day that passes without injunctive relief. "Justice delayed is little better than justice denied."[2]

## II.  LEGAL STANDARD

In determining whether to grant the extraordinary relief of injunctive relief prior to trial, a plaintiff must establish: "(1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) an injunction is in the public interest." *Cmmw. Utilities Corp. v. Johnson*, 218 F. Supp. 3d 1136, 1142 (D.N. Mar. Is. 2016) (citing *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008)).  Alternatively, a court may issue a preliminary injunction if the plaintiff demonstrates "serious questions going to merits" have been raised and "the balance of hardships tips sharply in plaintiff's favor" as well as satisfying the other *Winter* factors. *Id.* (citation omitted).

A "serious question" is whether the plaintiff has "a fair chance of success on the merits. *Id.* (citing *Sierra On–Line v. Phoenix Software*, 739 F.2d 1415, 1421 (9th Cir. 1984)). Serious questions must involve a fair chance of success on the merits but they "need not promise a certainty of success, nor even present a probability of success." *Id.* (citation omitted). "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Gilder v. PGA Tour, Inc*., 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Hamilton Watch Co. v. Benrus Watch Co*., 206 F.2d 738, 740 (2nd Cir.1953)). "For purposes of injunctive relief, 'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court

---

[2] Dillwyn, George; *Occasional Reflections, Offered Principally for the Use of Schools*, (Burlington, New Jersey, 1815).

perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Id. (*quoting *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1361–62 (9th Cir.1988)).

## III. ARGUMENT

Plaintiff meets the standard for issuance of a preliminary injunction because his claims have a fair chance of success on the merits; because the level of the threat of irreparable harm to Plaintiff is high if an injunction is not issued; because the balance of equities tips in Plaintiff's favor; and because an injunction is in the public interest.

### A.  Fair Chance of Success on the Merits.

Plaintiff has brought claims of: (1) Violations of Right to Due Process of Law, Right to Freedom of Speech and of Assembly brought under 42 U.S.C. § 1983 against Defendant Secretary of Finance in his personal and official capacities and against Defendant Castro in his personal and official capacities (Causes of Action 1-2 in the Verified Complaint); (2) a declaratory judgment against all Defendants; (3) political coercion against Defendant Secretary of Finance and Defendant Castro, in their personal and official capacities; and for injunctive relief.

### 1.  Constitutional Violations Brought Under 42 U.S.C. § 1983

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Plaintiff alleges Defendant Secretary of Finance and Defendant Castro violated Plaintiff's right to due process under the Fourteen Amendment to the U.S. Constitution and Article I, Section 5 of the CNMI Constitution, and his right to freedom of speech and of assembly under the First Amendment of the U.S. Constitution. Plaintiff has alleged that the Secretary's illegal "reassignment" to a civil service position that did not properly exist at the time of the reassignment was a de facto adverse decision that was issued without notice and an opportunity to be heard, which violated Plaintiff's right to procedural due process and was done in retaliation to Plaintiff's political affiliation and speech.

### a. Preliminary Issues Regarding Ability to be Sued, Immunity, and Exhaustion of State or Administrative Remedies

### i. Ability to be Sued

As to any preliminary issues regarding whether officials may be sued in a Section 1983 action in their official or personal capacities, CNMI officials named in their personal capacities are persons for the purposes of Section 1983 and officials may also be sued in their official capacities for injunctive relief and in their individual capacities for damages. *Camacho v. CNMI Dept. of Corrections*, 18-CV-00008, 2019 WL 392376, at *5 (D.N. Mar. Is. Jan. 31, 2019).

### ii. Immunity

Courts have granted absolute immunity to the President, judges, prosecutors, legislators, witnesses, and officials performing "quasi-judicial" functions. *Fry v. Melaragno*, 939 F.2d 832, 836 (9th Cir. 1991) (citation omitted); *see also Tower v. Glover*, 467 U.S. 914, 920 (1984); *Procunier v. Navarette*, 434 U.S. 555, 561 (1978); *Miller v. Gammie*, 335 F.3d 889, 895–96 (9th Cir. 2003) (en banc). "Absolute immunity 'is an extreme remedy, and it is justified only where any lesser degree of immunity could impair the judicial process itself.'" *Garmon v. Cty.*

6

*of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016) (citation omitted). "The 'official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" *Garmon,* 828 F.3d at 843 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Here, Defendant Secretary of Finance and Defendant Castro are not the President, judges, prosecutors, legislators, witnesses, or officials performing quasi-judicial functions, and are therefore not entitled to absolute immunity.

As to qualified immunity, officials are not entitled to qualified immunity when their conduct exceeds the scope of their authority and violates clearly established constitutional rights. *Merritt v. Mackey,* 827 F.2d 1368, 1373 (9th Cir. 1987). When the law is clearly established, the qualified immunity defense will fail "since a reasonably competent public official should know the law governing his conduct." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)). As below described, the Secretary of Finance exceeded his authority by attempting to create a new civil service position, transferring Plaintiff to another government agency under the fictional position, and by depriving Plaintiff of notice and an opportunity to be heard, as these actions were in clear violation of the U.S. Constitution, the Civil Service System Act, the Civil Service Personnel System Rules and Regulations, and CNMI statute. Defendant Castro also exceeded his authority as the Chief of Staff by setting in motion the series of acts that he knew or reasonably should have known would result in constitutional harm to Plaintiff, as below described.

### iii.  Exhaustion of Administrative Remedies and State Tort Claim Procedures.

As a general rule, a plaintiff is not required to exhaust state judicial or state administrative remedies before bringing an action under Section 1983. *Patsy v. Bd. of Regents*,

457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies."); *Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."), overruled on other grounds by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

As below argued, Plaintiff was not given the procedural due process required for an adverse action, but even if there was an administrative process available to him, his Section 1983 claims do not require exhaustion of those remedies nor any possibly applicable Commonwealth process for presentation of tort claims under 7 CMC § 2202.[3]

**b. Procedural Due Process**

Under the 14th Amendment to the U.S. Constitution, and Article 1, Section 5 of the NMI Constitution, no person shall be deprived of property without due process of law. U.S. Const. amend. XIV, § 1; NMI CONST. art. 1 § 5.  A claim for violation of due process must have three elements: "(1) a property interest protected by the Constitution; (2) a deprivation of the interest by the government; and a (3) lack of required process." *Deleon Guerrero v. CNMI State Bd. of Educ.,* 18-CV-00006, 2018 WL 2437582, at *3 (D.N. Mar. Is. May 30, 2018) (citing *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 974 (9th Cir. 2002) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). As a civil service employee, Plaintiff had a property interest in continued employment and that his employment would not be adversely

---

[3] Under 7 CMC § 2202, the Commonwealth government is liable for tort damages arising from the negligence of its employees acting within the scope of their employment and require that a claim must first be presented to the Attorney General for disposition within 90 days before suit on the negligence claim may be filed. Here, this process is not applicable to Section 1983 claims. Additionally, Plaintiff has not brought a claim for negligence and his claims include actions taken in Defendant Secretary of Finance's and Defendant Castro's personal capacities and outside their authority of their employment, not just their official capacities.

affected without procedural due process. *See Kizer v. Shelby County Government,* 649 F.3d 462, 466 (6th Cir. 2011) ("Where a state civil service system categorizes public employees as classified—that is, not subject to removal at will—employees have a state-law-created, constitutionally protectable property interest in maintaining their current employment." *Id.* (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985)); *c.f. Hofschneider v. Demapan-Castro,* CV-04-0022-ARM, 2005 WL 817710, at *2 (D.N. Mar. Is. Apr. 11, 2005) (finding plaintiff failed to show a reasonable expectation of continued employment where he was employed pursuant to an employment contract that contained a clause providing that he could be fired at will).

CNMI law provides for a Civil Service System based on "...merit principles and generally accepted methods governing the classification of positions and the employment, conduct, movement, and separation of public officials and employees." 1 CMC § 8102. CNMI law provides that the Civil Service System must be applied and administered in accordance with the following principles:

> (1) Equal opportunity for all regardless of age, race, sex, religion, political affiliation or place of origin;
> (2) Impartial selection of the best person for government service by means of competitive tests which are fair, objective, and practical;
> (3) Just opportunity for competent employees to be promoted within the civil service;
> (4) Reasonable job security for the competent employee;
> (5) Systematic classification of all posts through adequate job evaluation;
> (6) Fair and reasonable grievance procedures for all employees pertinent to condition of employment; and
> (7) Proper employer employee relations to achieve a well trained, productive and happy work force.

1 CMC § 8102(c)(1)-(7).

9

Civil service employees are entitled to the protections granted to them by the Personnel Service System Rules and Regulations, which provide a required procedural due process system for adverse actions, as set forth and argued in Section III.A.2. of this Memorandum and incorporated herein by reference.

Here, acting under the color of law, the Secretary of Finance violated Plaintiff's procedural due process rights by effectively terminating his civil service employment by purporting to reassign him to a position that was not actually an official civil service position and for which Plaintiff could not be legally compensated as a civil service employee. The purported position of Director of Export, Importation & Public Outreach is not an existing position for an employee under the Civil Service System and therefore any statement by the Secretary of Finance that this fictional position does not change Plaintiff's civil service status is not supported by any law, regulation, or fact. The Secretary of Finance's statement that the position is for a six-month term contradicts his statement that the new position will not result in any losses or benefits, particularly with regard to Plaintiff's protected civil service status. Plaintiff is entitled to the protections given to him by CNMI law as a civil service employee but was deprived of any redress by the Secretary of Finance. The Secretary of Finance's Order is a demotion and an adverse action taken against Plaintiff with no right to due process and is a violation of Plaintiff's constitutional rights.

As to Defendant Castro, he is also liable under Section 1983 for his part in effectuating Plaintiff's effective termination from the Civil Service. A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that

causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Here, upon information and belief based on Defendant Castro's stated intentions of terminating Plaintiff unless he fell in line, Defendant Castro participated in Defendant Secretary of Finance's act in effectively terminating Plaintiff from the Civil Service. "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743); *see also Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *c.f. Martinez v. California,* 444 U.S. 277 (1980) (Section 1983 action against a state parole board for violation of a girl's constitutional rights after she was killed by a parolee following the parole board's granting of release to the parolee did not demonstrate causation because the girl's death was too remote of a consequence to hold the parole board responsible). Here, although discovery has not yet been conducted and Plaintiff does not have all of the facts to clearly delineate what steps Defendant Castro took to effectuate Plaintiff's reassignment, there is evidence that Defendant Castro intended to cause Plaintiff's termination. It was not unforeseeable that if Defendant Castro, as the Chief of Staff to the highest executive officer of the CNMI, ordered the termination, demotion, or adverse decision to Plaintiff, that those in positions to effectuate that order would do so. This is not a

remote consequence. Instead, the consequence appears to be directly related to Defendant Castro's threats against Plaintiff's employment or at least raises serious questions.

**c.  Constitutionally Protected Freedom of Association/Assembly.**

The First Amendment to the U.S. Constitution and Article I, Section 2 of the NMI Constitution guarantee freedoms concerning speech and the right of assembly. U.S. Const. amend. I; NMI CONST. art. 1 § 2. Plaintiff has alleged that another reason for the adverse decision against him was based on his political support for a candidate other than the incumbent Governor in the upcoming November 2022 General Election in the CNMI. Governments are not allowed to deny benefits to persons because of their constitutionally protected associations as this is impermissible interference with constitutional rights. *Branti v. Finkel*, 445 U.S. 507, 515 (1980) (citation omitted). The First Amendment protects public employees from discharge based their speech as well as their beliefs. *Id.* at 515-16 ("Under this line of analysis, unless the government can demonstrate an overriding interest of vital importance requiring that a person's private beliefs conform to those of the hiring authority, his beliefs cannot be the sole basis for depriving him of continued public employment.") (citations and quotes omitted) (affirming the entry of an injunction against termination of employment on purely political grounds).

As alleged by Plaintiff, it is no secret that he will not support the incumbent Governor in the upcoming election and that Plaintiff took actions outside the workplace to support the incumbent Governor's gubernatorial opponent in public. And as admitted by the Governor's Chief of Staff, Plaintiff's employment was only safe as long as Plaintiff was 'with the Governor.' The U.S. Constitution and U.S. Supreme Court case law directly prohibit this type of interference.

**2. Declaratory Judgment.**

Federal courts have the authority to issue declaratory judgments in cases of actual controversies. 28 U.S.C. § 2201. An action for a declaratory judgment is justiciable if there is a substantial controversy between parties with adverse legal interests "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Alvarez v. Seahorse Inc.,* 16-CV-00014, 2017 WL 3973035, at *16 (D.N. Mar. Is. Sept. 8, 2017) (quoting *Seattle Audubon Soc'y v. Mosley,* 80 F.3d 1401, 1405 (9th Cir. 1996)) (quoting *Nat'l Basketball Ass'n v. SDC Basketball Club*, 815 F.2d 562, 565 (9th Cir. 1987)). Federal courts have unique and substantial discretion in deciding whether or not to decide whether to declare the rights of parties and may find that considerations of practicality and wise judicial administration yield to the normal principle that federal courts should adjudicate claims within their jurisdiction. *Id.* (citations omitted). Plaintiff has alleged an actual and substantial controversy as an alternative cause of action if the causes of action alleged by Plaintiff fail to render the relief requested which is essentially the injunctive relief of declaring the Secretary of Finance's decision to reassign Plaintiff in violation of his constitutional rights, ultra vires and void.

An actual controversy exists here between Plaintiff and the Secretary of Finance and/or the Defendant Castro and/or the Commonwealth Government as to the Secretary of Finance's decision to "reassign" Plaintiff to the Department of Commerce. The Commonwealth Civil Service Act was enacted to establish a system of personnel administration based on merit and generally accepted methods governing the classification of positions and the employment, conduct, movement, and separation of public officials and employees. 1 CMC § 8102. Civil service employees are entitled to the protections granted to them by the Civil Service Personnel

System Rules and Regulations and are likewise protected from being discriminated against for their political affiliation under 1 CMC § 8141.

**a. The Secretary of Finance's Decision was a De Facto Adverse Decision that Deprived Plaintiff of Due Process.**

The Secretary of Finance purported to create a position that does not actually exist within the Civil Service system and then attempted to reassign Plaintiff to the fictional position within the Department of Commerce. The Secretary of Finance's Order did not inform Plaintiff of any right to appeal the decision or to respond with a grievance or any other indicia of due process. Indeed, the Order is carefully worded to deny Plaintiff of any administrative remedies. The Personnel Service Appeals System under Subpart D of the Civil Service Commission Personnel Service System Rules and Regulations provides an administrative process for employees suffering from suspension, furloughs, separations, and demotions not resulting from reduction-in-force. NMIAC § 10-20.2-255. Adverse actions taken under Subpart D require appointing authorities to observe certain procedural requirements, including a letter of proposed adverse action that has been reviewed by the Personnel Office and the Attorney General, or their designees, before issuance. NMIAC § 10-20.2-257(m). An employee suffering from an adverse action under Subpart D must be given at least thirty days' notice of the proposed adverse action and the employee has a right to answer and if at all practicable, the employee must be kept on active duty in the regular position during the notice period. NMIAC § 10-20.2-257(m)(3)-(5). Additionally, the employee must be given a written decision *before* the adverse decision is effected, stating the reasons for the decision and advising the employee of appeal rights. NMIAC § 10-20.2-257(m)(6)-(7). Under Subpart D, the adverse action procedural system provides for the management official's letter of proposed adverse action, the employee's

answer and/or presentation of evidence, the management official's letter of decision, the employee's written appeal to the Civil Service Commission, a Civil Service Commission hearing, a Civil Service Commission decision, at which point after the administrative remedies have been exhausted, the employee then has the option of proceeding to the NMI Superior Court for judicial review, which could then be appealed to the NMI Supreme Court.

In this case, the Secretary of Finance's Order does not reference any suspension, furlough, separation, and demotion not resulting from reduction-in-force which would allow Plaintiff to avail of any procedural due process under Subpart D of the Civil Service Commission Personnel Service System Rules and Regulations.

Similarly, Subpart F of the Civil Service Commission Personnel System Rules and Regulations provides an administrative process for employees to appeal a decision to take adverse action resulting from reduction-in-force procedures, or an "unsatisfactory" or "satisfactory" performance rating. NMIAC § 10-20.2-275. An employee's rights under this process cannot be denied and include the employee's right to a hearing, the right to be free from an employer's reprisal or interference, the right to representation, and the right to time to file an appeal to be heard by the Civil Service Commission, wherein the employee has the opportunity to present witnesses and evidence. NMIAC §§ 10-20.2-276 to 279. If the Civil Service Commission finds any regulatory or procedural defect in the appointing authority's decision to take adverse action, the employee would be entitled to reversal of the action. NMIAC § 10-20.2-280.

In this case, the Secretary of Finance's Order does not reference any reduction-in-force procedures, or an "unsatisfactory" or "satisfactory" performance rating which would allow

Plaintiff to avail of any procedural due process under Subpart F of the Civil Service Commission Personnel Service System Rules and Regulations.

Finally, Subpart G of the Civil Service Commission Personnel Service System Rules and Regulations provides a grievance procedure to cover all matters of concern or dissatisfaction to an eligible employee unless the grievance is excepted by an adverse action appealed under Part 200, Subpart D, a fitness-for-duty examination, the content of published government policy, non-selection for appointment, promotion, or transfer from a group of properly ranked and certified candidates, non-adoption of a suggestion or disapproval of a merit increase, performance award, or other kind of honorary discretionary award, and an employee who is serving on probationary status. NMIAC § 10-20.2-285.

The Secretary of Finance's Order of Reassignment is a de facto adverse action, which is excepted under any grievance procedure under Subpart G. The purported position of Director of Export, Importation & Public Outreach is not an existing position for an employee under the Civil Service System and therefore any statement by the Secretary of Finance that this fictional position does not change Plaintiff's civil service status is not supported by any law, regulation, or fact. The Secretary of Finance's statement that the position is for a six-month term contradicts his statement that the new position will not result in any losses or benefits, particularly with regard to Plaintiff's protected civil service status. Plaintiff is entitled to the protections given to him by CNMI law as a civil service employee but was deprived of any redress by the Secretary of Finance. Additionally, Plaintiff has a constitutionally protected property interest in his continued employment as a public employee. The Secretary of Finance's Order, in which Defendant Castro play a part in causing, is a demotion and an adverse action

taken against Plaintiff with no right to due process and is a violation of Plaintiff's constitutional rights.

**b. The Secretary of Finance's Decision was Ultra Vires and Void.**

As above set forth, Plaintiff communicated with the Office of Personnel Management on July 21, 2022, which confirmed that the purported position assigned by the Secretary of Finance did not exist. Under the Civil Service Act, "[c]lass titles shall be used to designate positions in all official records, documents, vouchers, and communications; and no person shall be appointed to or be employed in a position in the civil service under any title which has not been approved by the Commission." 8 CMC § 8132. The Secretary of Finance had no authority to reclassify Plaintiff and to designate a position which has no official record nor to purport to employ a person in a civil service under an unapproved position. Plaintiff raised this issue when he filed a complaint against the Secretary of Finance and the Commonwealth Government in the CNMI Superior Court on July 24, 2022. In a letter from the Secretary of Commerce dated July 21, 2022, but stamped received by the Office of Personnel Management on July 25, 2022[4], the Secretary of Commerce requests the Office of Personnel Management to create the position, after the fact. *See* Verified Complaint, Exhibit 4.

Further, the Secretary of Finance's Order to effectively reclassify Plaintiff's employment and subdelegate an employment position that does not exist to another government agency is ultra vires and void. Because the Secretary of Finance's Order is an illegal and ultra

---

[4] Exhibit 4 shows the date "7/25/22" under a stamp labeled "OPM." There is also a partially visible stamp that says "Received," "Office of Personnel Management" and contains the date ("22, 2022"). The month is not legible but given that the letter was also stamped received on July 25, 2022, the illegible stamp likely reads ("July 22, 2022"). At any rate, both dates are after the transfer on July 21, 2022.

vires act, there is no administrative remedy to exhaust where the action taken by the appointing

authority is not an action contemplated for or addressed with the Civil Service Commission

Personnel Service System Rules and Regulations. And it is clear here that the purported

reassignment was not for any legal purpose. "[S]ubdelegation from one agency to another is

improper without an affirmative showing that the legislature approved it." *RNV Constr. v.*

*GPPC, Inc.,* 2021 MP 13 ¶ 22. One government agency cannot delegate its authority to another

agency. While the Defendants may claim that this was simply a transfer from one civil service

position to another, there is no basis in law or fact to support this. Additionally, this was not a

valid transfer effected under NMIAC § 10-20.2-245:

> An employee may be transferred, without change in pay level, either voluntarily
> or involuntarily, in order to meet changing program needs, to promote career
> development, to provide diversity of experience, or for other reasons. Transfers
> under this regulation are not subject to the promotion program unless the position
> to which transferred has known promotion potential. Transfers are made,
> wherever possible, from among employees who have requested such transfers.
> However, management may direct lateral transfers from among all qualified
> Public Service System employees when required by the needs of the service and
> in accordance with applicable personnel regulations.

NMIAC § 10-20.2-245.

Plaintiff did not request any transfer. Additionally, this was not a direct lateral transfer among

all qualified employees in accordance with personnel regulations because the fictional position

does not exist under the Civil Service system.

**c. The Secretary of Finance's Decision was a Violation of Plaintiff's Equal
Opportunity Rights under the Civil Service Act because it was Based on Political
Affiliation.**

Several of the relevant and stated purposes of the Commonwealth Civil Service Act are

for equal opportunity for all regardless of political affiliation, reasonable job security for the

competent employee, fair and reasonable grievance procedures for all employees pertinent to conditions of employment, and proper employer-employee relations to achieve a well-trained, productive, and happy workforce. 8 CMC § 8102(c)(1), (4), (6), and (7).

Another purpose of Commonwealth Civil Service Act is to:

...[B]uild a career service which will attract, select and retain the best qualified civil servants on merit who shall hold their offices or positions free from coercion, discrimination, reprisal or political influence, with incentives in the form of genuine opportunities for promotions in the public service, to provide competent and loyal personnel to render impartial service to the public at all times, and to render such service according to the dictates of ethics and morality.

8 CMC § 8102(b).

As supported by the facts pled in the Verified Complaint, Plaintiff has been an exemplary civil service employee which is undisputed by the Secretary of Finance. As also supported by the facts of the Verified Complaint, Plaintiff was warned to essentially fall in line and that his job would be safe only as long as he was 'with the governor.' Plaintiff is protected not only by CNMI law but also by the Civil Service Personnel System Service Rules and Regulations which are intended to protect public employees from exactly this type of interference based on political affiliation. *See* 1 CMC § 8141 ("No person holding any position in the civil service shall be favored or discriminated against on account of age, race, sex, religion, political affiliation, or place of origin.").

## 3. Cause of Action for Political Coercion

CNMI statute provides for a standalone and nonexclusive cause of action for political coercion:

(a) In addition to, independent of, and irrespective of the criminal penalties prescribed by 1 CMC § 8152(b), any person who has been the victim of political coercion as described in 1 CMC § 8152(b) may recover from the perpetrator of the political coercion, full damages, both tangible and intangible, as a result of

the coercion, attorneys fees, and court costs by means of a civil action.
(b) Nothing in this article shall be construed to in any way limit or reduce any other remedies that may be available under other law.

1 CMC § 8153.

Plaintiff is the victim of political coercion as described in 1 CMC § 8152(b)[5]:

It is an offense for any person to cause or threaten to be caused a demotion in rank or civil service classification or position, or a decrease in pay or any other benefit, or tenure of employment, of any government employee, with intent to discourage or encourage such government employee to support any candidate for public office, initiative or referendum, or political party.

1 CMC § 8152(b).

As described in Plaintiff's Verified Complaint, Defendant Castro caused and/or threatened to cause the effective termination of Plaintiff as a civil service employee with the express intent of discouraging him, as a government employee, from supporting a candidate who was not the incumbent Governor. Further, Defendant Secretary of Finance effectuated Defendant Castro's threat and carried out the actual effective termination of Plaintiff as a civil service employee with the express intent of discouraging him, as a government employee, from supporting a candidate who was not the incumbent Governor. Based on the statements made by Defendant Castro, Plaintiff submits that this claim is likely to be successful on the merits.

**B. Irreparable Harm.**

The second factor is irreparable harm in the absence of injunctive relief. A plaintiff asserting irreparable harm must "demonstrate that irreparable injury is likely in the absence of an injunction." *Imperial P. Intl. (CNMI) LLC v. Cmmw. Casino Commn.,* 19-CV-00014, 2019 WL 3557896, at *8 (D.N. Mar. Is. Aug. 6, 2019) (quoting *Winter*, 555 U.S. at 22). "Irreparable

---

[5] A person can also be convicted for political coercion under 1 CMC § 8152: "A person convicted of the offense of coercion of a government employee pursuant to subsection (b) of this section shall be punished by not more than six months imprisonment, a fine of not more than $1,000, or both such fine and imprisonment." 1 CMC § 8152(b).

harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Id.* (quoting *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). The element of harm must be grounded in evidence cannot be speculative or based on conclusory statements. *Id.*

Here, the irreparable harm is the deprivation of a constitutionally protected property interest without due process and the violation of Plaintiff's First Amendment right to hold whatever political affiliation he wishes without fear of interference, which Plaintiff expects will only continue in his "reassigned" position. *See, e.g., Amalgamated Transit Union, Loc. 1277, AFL-CIO v. Sunline Transit Agency*, 663 F. Supp. 1560, 1564 (C.D. Cal. 1987) (finding irreparable harm may occur if a preliminary injunction were denied because constitutional rights of public employees would be violated if an agency were allowed to conduct random drug and alcohol tests during the pendency of the lawsuit). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding irreparable injury where non-civil service employees were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge). "The Court assumes without deciding that any constitutional violation would result in presumed irreparable harm." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1259 (D. Or. 2021). The Ninth Circuit has not required a strong showing of irreparable harm for constitutional injuries. *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). In situations where the plaintiff's "First Amendment rights [are] being chilled daily, the need for immediate injunctive relief without further delay is, in fact, a direct corollary of the matter's

great importance." *Sanders Cty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012).

Every day that passes from the Secretary of Finance's July 21, 2022, Memorandum and its effects on Plaintiff results in Plaintiff's right to free speech being chilled daily. This matter requires this Court's immediate injunctive relief without further delay.

Furthermore, the Secretary of Finance's Order was clearly intended to humiliate and make an example of Plaintiff. The Order starts with two paragraphs describing what incredible service Plaintiff has provided to the Commonwealth and then dovetails its mockery into the conclusion that Plaintiff's high-level skills are needed for a made-up position at the Department of Commerce instead of being on the front lines of the war against methamphetamine in the CNMI. This is harm to Plaintiff's personal and professional reputation and was clearly intended to send a message to public employees in similar positions. These are not damages that can be adequately measured and are not compensable by money damages. *See Allman v. Padilla*, 979 F. Supp. 2d 205, 221 (D.P.R. 2013) (finding irreparable injury where an employee's property interest cloaked with constitutional protection in employment was terminated, resulting in the loss of the employee's salary as well as humiliation and shame in the eyes of the public and the employee's peers). This irreparable injury will continue to occur, day by day, unless the Court affords the requested injunctive relief.

## C.  The Balance of Equities Tips in Plaintiff's Favor.

The third factor considers the balance of equities between the opposing parties. The Court must balance on one hand the harm Plaintiff would face should the Court deny his motion for a temporary restraining order and a preliminary injunction, and on the other hand the harm

that Defendants would face being in not being able to instead employ a close relative of the Governor's running mate.

Here, if the Court denies the preliminary relief requested by Plaintiff, the status quo will not be maintained. For purposes of injunctive relief, the Court need not resolve serious questions one way or the other, and the Court should instead determine whether there is a need to preserve the status quo in order to prevent one side stonewalling the serious questions from ever being resolved or the execution of a judgment by altering the status quo. *Cmmw. Utilities Corp.,* 218 F. Supp.3d at 1142.

The last uncontested status prior to the pending controversy was Plaintiff doing his job, well, as the Director of Customs when the Secretary of Finance issued his de facto adverse decision without prior notice or due process. The Defendants will suffer no hardship in having a qualified and competent employee continuing to do his job to protect the Commonwealth's borders. The balance of the equities based on the hardship to Plaintiff's constitutional rights, particularly the daily chilling effect on his constitutional right to free speech, weighs heavily in favor of Plaintiff.

**D. An Injunction is in the Public Interest.**

The fourth factor is whether the injunction is in the public interest. The public has an interest in ensuring that government agencies and officials follow the U.S. and CNMI Constitutions, and CNMI laws and regulations. The public is served by ensuring, particularly now in the height of the political season, that the law of the Commonwealth will provide protection of the public's constitutional rights, and that public employees can assert trust in their

right to due process, and will be free to assert their First Amendment rights without fear of reprisal or interference by their own government.

### E. Alternative combination of factors.

The Court may issue a preliminary injunction if the moving party raises "serious questions going to the merits," the balance of hardships tips sharply in the plaintiff's favor, and the other factors of public interest and irreparable harm are met. *Id.* Here, Plaintiff meets this alternative standard. There are at least serious questions going to the merits of Plaintiff's claims as above set forth. Plaintiff will suffer much greater hardship if injunctive relief is not given than the Defendants will suffer if injunctive relief is ordered. The violation of Plaintiff's constitutional rights is irreparable damage. And it would serve the public interest if the Court were to issue injunctive relief to preserve the status quo while this matter is pending determination on the merits.

## IV. SECURITY

Rule 65(c) of the Federal Rules of Civil Procedure gives this Court this authority to issue the requested preliminary injunction if Plaintiff gives security in an amount that the Court considers proper to pay the costs and damages sustained by Defendants in the event that it is found that Defendants were wrongfully enjoined. FED. R. CIV. P. 65(c). Plaintiff asserts Defendants will not suffer any costs or damages if enjoined but will offer security in the amount the Court considers proper.

## V. CONCLUSION

For the reasons above set forth, Plaintiff requests the Court to issue a temporary restraining order and preliminary injunction against Defendants. The actions of the Defendants

in blatantly violating the U.S. and CNMI Constitutions, as well as other CNMI law and Regulations, cannot be tolerated. Our democracy ensures that every person has the right and freedom of thought and to possess a political opinion without oppression and reprisal from the very government that should be protecting these precious freedoms. The actions of the Government in this case send a ringing message of repression and retaliation to others similarly situated to Plaintiff who assert the rights guaranteed to them by our Constitution. Plaintiff respectfully asks that a message instead be sent by this Court that the laws of our Commonwealth and the rights set forth in the U.S. and NMI Constitutions will be respected, upheld, and enforced. Plaintiff asks that this Court send a message that public employees willing to blow the whistle will find immediate relief.[6]

Respectfully submitted this 27th day of July, 2022.


/s/ *Charity R. Hodson*
By: Charity R. Hodson (F0487)
Attorney for Plaintiff

---

[6] "It may often be the case that, unless public employees are willing to blow the whistle, government corruption and abuse would persist undetected and undeterred." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013).

25