F I L E D
Clerk
District Court

MAR 03 2023

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **JOSE C. MAFNAS,** | **Civil Action No. 1:22-cv-00009** |
| **Plaintiff,** | |
| **v.** | **DECISION AND ORDER:** |
| **WILLIAM M. CASTRO, in his personal capacity, and in his official capacity as the Chief of Staff of the Office of the Governor, DAVID DLG. ATALIG, in his personal capacity, and in his official capacity as the Secretary of Finance of the Department of Finance, and THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,** | **DENYING CNMI's MOTION FOR SUBSTITUTION,** |
| | **GRANTING DEFENDANTS' MOTIONS TO DISMISS IN PART,** |
| | **AND GRANTING PLAINTIFF LEAVE TO AMEND** |
| **Defendants.** | |

Plaintiff Jose C. Mafnas filed a verified complaint (ECF No. 1) asserting civil rights violations under 48 U.S.C. § 1983 and Commonwealth law against Defendants William M. Castro, in his personal capacity and in his official capacity as the Chief of Staff of the Office of the Governor; David DLG. Atalig, in his personal capacity and in his official capacity as the Secretary of Finance of the Department of Finance; and the Commonwealth of the Northern Mariana Islands (CNMI). In addition to damages and attorney's fees and costs, Mafnas seeks a declaratory judgment and an injunction prohibiting the Secretary of Finance from removing him from his current position as Director of Customs and Biosecurity. (Compl. 22.) [1] There are several matters pending before the Court. First, CNMI Attorney General Edward Manibusan filed a

---

[1] The Court references the page numbers located in the header of the document and generated by the CM/ECF filing system.

certification of scope of employment for Atalig and notice of substitution as to the First, Fourth and Fifth Causes of Action against Atalig to the extent they allege violations of the CNMI Constitution and laws (Mot. Substitution, ECF No. 31), which the Court interpreted as a motion for substitution pursuant to *Norita v. Commonwealth of N. Mariana Islands Dep't of Pub. Safety*, No. 18-CV-00022, 2019 WL 150875, at *4 (D. N. Mar. I. Jan. 10, 2019) (Order, ECF No. 34.). Plaintiff filed an opposition (Opp'n Mot. Substitution, ECF No. 37), to which the CNMI and Atalig filed a reply (Reply Mot. Substitution, ECF No. 38).

Second, Defendants each filed a motion to dismiss. In their personal capacities, Atalig and Castro separately filed motions to dismiss (ECF Nos. 30, 33, respectively) supported by memorandums of law (Atalig's Mot. Dismiss, ECF No. 30-1; Castro's Mot. Dismiss, ECF No. 33-1). The CNMI and the official capacity Defendants filed a motion to dismiss (ECF No. 32) also supported by a memorandum of law (CNMI's Mot. Dismiss, ECF No. 32-1).[2] Plaintiff filed an omnibus opposition to all three dispositive motions (Opp'n, ECF No. 39). Replies were filed by the CNMI and the official capacity Defendants (CNMI's Reply, ECF No. 40), as well as Atalig and Castro in their personal capacities (Atalig's Reply, ECF No. 41; Castro's Reply, ECF No. 42).

The matters came for a hearing at which time the Court took the matters under submission (Mins., ECF No. 43). The Court now issues this decision and order DENYING the CNMI's and

---

[2] Atalig's and CNMI's motions to dismiss are remarkably similar; the only significant difference between the two is that the CNMI expanded Atalig's "Substitution" section to its section on "Substitution and Sovereign Immunity" to assert its defense of sovereign immunity.  Counsel confirmed at the hearing that attorneys for Atalig and the CNMI coordinated with one another in drafting their motions.

official capacity Defendants' motion for substitution, GRANTING the motions to dismiss in part, but GRANTING Plaintiff leave to amend his complaint.

## I.      FACTUAL BACKGROUND

Plaintiff Mafnas alleges that Castro directed Atalig, Plaintiff's supervisor, to reassign Plaintiff from his position as Director of Customs and Biosecurity within the Department of Finance to a separate government agency, the Department of Commerce as the Director of Export, Importation, & Public Outreach, because of Mafnas' support for the incumbent governor's opponent at that time. (Compl. ¶¶ 13, 21, 24, 75, 79.) Atalig, as the Secretary of Finance, provided Plaintiff a Memorandum of Reassignment that listed the details of the transfer (*id.* ¶ 21), including that Plaintiff "will not experience any loss in [his] employment rights or benefits. [His] Civil Service Status has not, and will not change, nor will [he] have a reduction in pay or benefits during this period." (Mem. Reassignment, ECF No. 12-2.) To substantiate his claim that he was retaliated against for not supporting the governor, Plaintiff provided several text messages between Castro and Plaintiff, and Castro and Plaintiff's niece, wherein it appears that Castro was angry about Plaintiff's lack of support for the governor. (Compl. ¶¶ 61-70; ECF Nos. 1-2 – 1-4.) Plaintiff also alleges that he was not provided any process to appeal this reassignment in violation of his right to due process. (Compl. ¶¶ 34, 53, 57.)

Mafnas alleges five causes of action: 1) a § 1983 claim asserting that Castro and Atalig in their personal capacities violated his rights to due process and freedoms of speech and association; 2) an identical § 1983 claim except against Castro and Atalig in their official capacities; 3) a claim seeking declaratory judgment; 4) a claim of political coercion in violation of Commonwealth law at 1 CMC § 8153; and 5) a claim for injunctive relief. (Compl. 15-22.) The same day that Plaintiff

filed his complaint, he also filed a motion for a temporary restraining order (ECF No. 2). The Court granted the temporary restraining order and set a hearing for the preliminary injunction motion (ECF No. 7). The parties engaged in extensive briefing on the motion for a preliminary injunction, which included submission of several declarations (ECF Nos. 12-1, 12-3, 12-4, 14-1, 14-3, 14-5, 15-1). Ultimately, the Court granted the parties' stipulation to the issuance of a preliminary injunction such that Mafnas remains in the position of Director of Customs and Biosecurity. (ECF No. 29.) This resulted in Plaintiff being away from his Director of Customs and Biosecurity position for about a week.

## II.    LEGAL STANDARDS

### A.    Motion for Substitution

The purpose of the CNMI's Government Liability Act ("GLA"), codified at 7 CMC §§ 2201-2214, "is to protect government employees from tort liability arising out of the scope of his/her employment." *Manila v. Guerrero*, No. 1:18-CV-00003, 2022 WL 4588848, at *3 (D. N. Mar. I. Sept. 29, 2022) (citing *Bisom v. Commonwealth*, 2002 MP 19 ¶ 7). The GLA is "the exclusive means 'for claims against all branches of the Commonwealth government'; in other words, the Commonwealth limits its waiver of sovereign immunity to tort actions under the GLA." *Id.* (quoting 7 CMC § 2208(a)). Additionally, "the GLA is the exclusive remedy against the Commonwealth for the tortious acts of Commonwealth employees acting within the scope of their employment." *Id.* (citing 7 CMC § 2208(b)(1); *Christian v. Commonwealth*, No. 1:14-CV-00010, 2016 WL 4004574, at *3 (D. N. Mar. I. July 7, 2016)). Generally, "[o]ther actions 'arising out of or relating to the same subject matter against the employee . . . [are] precluded' no matter when the tortious act occurred." *Id.* (citing 7 CMC § 2208(b)(1)). But the GLA "delineates two

exceptions to allow for civil actions against government employees pursuant to a violation, either under the United States or Commonwealth Constitution . . . or where there is a separate federal or local statute authorizing a suit[.]" *Id.* (citing 7 CMC § 2208(b)(2)). In cases arising under these exceptions, "substitution of the Commonwealth is 'improper' and 'must be denied regardless of whether [the individual defendants] were acting in their official capacity.'" *Id.* at *4 (quoting *Christian*, 2016 WL 4004574, at *3); *see also Norita*, 2019 WL 150875, at *3 ("constitutional claims and claims based on a statute that creates a private cause of action are not precluded by the Reform Act, which means that this substitution pursuant to that Act would be improper").

**B.      Motion to Dismiss**

Each Defendant seeks to dismiss Plaintiff's complaint for failure to state a claim as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations need not be detailed, but a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. In determining whether a motion to dismiss should be granted, there is a two-step process: first, "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Conversely, "[a] motion to dismiss under Rule 12(b)(6) will be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief.'" *Bonnichsen v. U.S. Dep't of the Army*, 969 F. Supp. 614, 619 (D. Or. 1997) (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986)).

Generally, when ruling on a 12(b)(6) motion, a court may consider only the pleadings and limited materials, such as "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). If a court considers other evidence, "it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *Id.* at 907.

If a motion to dismiss is granted, "leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment." *Dog Bites Back, LLC v. JPMorgan Chase Bank, N.A.*, 563 F. Supp. 3d 1120, 1123 (D. Nev. 2021) (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)). Federal Rule of Civil Procedure 15(a) dictates that leave should be given freely "when justice so requires" and "in the absence of a reason such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   DISCUSSION

### A.   Motion for Substitution

Pursuant to 7 CMC § 2210, the CNMI's Attorney General filed a certification of scope of employment and notice of substitution on behalf of Atalig in his personal capacity for the first (§ 1983 claim against personal capacity defendants), fourth (political coercion), and fifth (injunctive

relief) causes of action. (Mot. Substitution 1.) In its reply, the CNMI withdrew its motion for substitution as to the fourth cause of action based on the state law claim of political coercion under 1 CMC § 8153 after acknowledging that the CNMI statute creates a private cause of action. (Reply Mot. Substitution 2.)

The CNMI and official capacity Defendants mistakenly assert that Mafnas' first and fifth causes of actions were based upon statutory violations of the Personnel Service System Rules and Regulations, rather than the actual basis – the United States' or CNMI's Constitution. (Reply Mot. Substitution 2.) The first cause of action alleges that Atalig and Castro violated 42 U.S.C. § 1983 because he acted under color of law when depriving Plaintiff of his constitutional rights to due process, freedom of speech, and freedom of association (*id.* at 15-16). Recently, this Court found that a plaintiff's § 1983 cause of action for the defendants' violation of his Eight Amendment right fell under the GLA's constitutional exception under 7 CMC § 2208(b)(2)(A) such that the CNMI was not permitted to substitute itself in for the individual defendants.[3] *Manila*, 2016 WL 4004574, at *4-5. Similarly, Mafnas' first cause of action brought under § 1983 for Atalig's alleged violation of his constitutional rights to due process, freedom of speech, and freedom of association falls under the GLA's constitutional exception. Therefore, the CNMI is precluded from substituting in for Atalig for the first cause of action.

For the fifth cause of action, Plaintiff seeks injunctive relief but did not identify the legal basis for it in his complaint. (*See* Compl. 22.) Nevertheless, it appears that he is requesting the injunction pursuant to § 1983. (*See* Opp'n Mot. Substitution 7.) At the hearing, Plaintiff's counsel

---

[3] Because § 1983 "'is not itself a source of substantive rights," a plaintiff asserting a § 1983 cause of action must "identify the specific constitutional right allegedly infringed." *Manila*, 2016 WL 4004574, at *4 (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

also confirmed that the injunction was sought solely under § 1983. Injunctions are available under § 1983. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Thus, the CNMI is unable to substitute in for Atalig for the fifth cause of action based on a § 1983 claim for the same reasons provided above.

Therefore, the attempted substitution for Atalig in his personal capacity for the first and fifth causes of action is improper, and the Court DENIES the motion for substitution.

**B.    Motions to Dismiss**

> *1.    The declarations that Defendants cited are not considered at the motion to dismiss for failure to state a claim phase.*

At the outset, the Court first clarifies the materials it considered when ruling on the three dispositive motions. Because Defendants moved pursuant to Rule 12(b)(6), the Court only considered the complaint, "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *See Ritchie*, 342 F.3d at 908. Specifically, the Court reviewed the complaint (ECF No. 1), the attached exhibits to the complaint (ECF Nos. 1-2 – 1-5), documents referenced in the complaint such as the Memorandum of Assignment (ECF No. 12-2) that was referenced in paragraph 31 of the complaint, and matters of judicial notice.

Defendants cite to declarations from Atalig (ECF No. 12-1), Castro (ECF No. 12-4), and Frances Torres-Salas (ECF No. 12-3) that were filed during the briefing on the preliminary injunction phase. (*See* Atalig's Mot. Dismiss 12, 14-15, 19-22; CNMI's Mot. Dismiss 12, 14-15, 19-22.) "Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d

8

1011, 1021 (C.D. Cal. 2015) (citation omitted). Here, the declarations of Atalig, Castro, and Torres-Salas were not referenced in the complaint. Further, the declarations and their contents are not proper subjects of judicial notice. A cursory review of the three referenced declarations reveals that the declarants attested to personal interactions they experienced. Such matters are not "generally known within the trial court's territorial jurisdiction" and cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" such that Federal Rule of Evidence 201 precludes judicial notice of these declarations. *See Turnacliff v. Westly*, 546 F.3d 1113, 1120 n.5 (9th Cir. 2008) (declining to take judicial notice of a declaration because the facts described in the declaration were not generally known and the declarant "was not a source 'whose accuracy cannot reasonably be questioned'"). Moreover, Atalig's rebuttal that the Court may consider the declarations because they are part of the record (Atalig's Reply 8) does not address the issue. It is undisputed that the declarations are part of this case's record; however, they are not part of the pleadings, referenced or attached in the complaint, or subject to judicial review such that the Court cannot, and did not, consider them at this stage of litigation.

> ### 2. Plaintiff's 42 U.S.C. § 1983 claims are dismissed for failure to properly allege a constitutional violation.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). For the constitutional violations, Plaintiff alleges Defendants violated his right to procedural due process and retaliated against him for exercising his First Amendment rights.

///

i.   Plaintiff's procedural due process claim neither identifies the source of his property interest nor deprivation of that interest.

To adequately state a procedural due process claim under § 1983, a plaintiff must plead "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Although "[a] government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job[,]" the employee must identify the independent source of the entitlement to the job, such as state law because "[t]he Due Process Clause does not create substantive rights in property." *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *accord Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 448 (6th Cir. 2014) (noting that the U.S. Constitution does not create property interests as those come from other sources like state statutes or contracts). For example, the CNMI Supreme Court analyzed a CNMI public law and concluded based on its analysis that the plaintiff, who was a government employee, did not have a property interest in continued employment because he was an at-will employee pursuant to the statute. *Deleon Guerrero v. Dep't of Pub. Lands*, 2011 MP 3 ¶ 18.

Here, Plaintiff alleges that he "has a constitutionally protected property interest in his continued employment as a public employee" (Compl. ¶ 52) and that Atalig and Castro took steps to deprive him of "his property interest in continued employment without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States." (*Id.* ¶¶ 86, 87.) Although he does not specify, Plaintiff's citation to the constitution as the origin for his property interest must be the CNMI's Constitution or statute as "property rights are defined by reference to state law." *Portman*, 995 F.2d at 904. However, Plaintiff does not specify what portion of the

10

CNMI's Constitution or which CNMI statute creates a property interest in continued government employment. As such, Plaintiff's procedural due process claim as currently plead is inadequate. *See Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988) (affirming district court's dismissal of procedural due process claim because the plaintiff failed to show that state or local law created a property right); *Springs*, 567 Fed. App'x. at 448 (noting that plaintiff did not meet her burden to establish she had a protected property interest because she "cannot merely allege that an unidentified statute provided her with a protected property interest in her job"); *see also Ya-Wen Hsiao v. Scalia*, No. 18-00502 JAO-KJM, 2021 U.S. Dist. LEXIS 39364, at *14-15, 2021 WL 817878, at *6 (D. Haw. Mar. 2, 2021) (dismissing procedural due process claim because the plaintiff did not identify her entitlement to continued employment); *Crown Castle NG W. LLC v. Town of Hillsborough*, No. 18-cv-02473-JSC, 2018 U.S. Dist. LEXIS 134790, at *20, 2018 WL 3777492, at *7 (N.D. Cal. Aug. 9, 2018) (dismissing a § 1983 procedural due process claim because the plaintiff did not specify in complaint the basis for the property right).

Assuming arguendo that Plaintiff identified the source of his property interest to his continued employment as a public employee, his due process claim still fails because the complaint does not state that the government deprived him of that property interest. In *Stiesberg v. State of California*, the Ninth Circuit addressed the issue of whether the plaintiff "ha[d] a constitutionally protected property or liberty interest in a particular position at [California Highway Patrol]." 80 F.3d 353, 357 (9th Cir. 1996). Ultimately, the Ninth Circuit answered in the negative because:

> In the absence of any allegation or showing that [the plaintiff] had a right not to be transferred . . . and/or that the conduct complained of amounted to a constructive demotion or discharge, [the plaintiff's] contention that the [defendants] failed to comply with the requisite administrative steps prior to transferring him amounts to

little more than a complaint that his unilateral expectations were not met. . . . Such a unilateral expectation, without more, does not involve any federally cognizable liberty or property interest.

*Id.*

Similarly, Plaintiff has neither identified a right not to be transferred, nor alleged a constructive demotion or discharge. In his complaint, Plaintiff asserts that Defendants' actions "depriv[ed] Plaintiff of his employment" and that the transfer was a "de facto adverse action[.]" (Compl. ¶¶ 47, 90.) However, Plaintiff was not terminated; rather, he was reassigned to a different position, and was and still is employed by the CNMI. Additionally, the Memorandum of Reassignment explained that "[w]ith this transfer, [Plaintiff] will not experience any loss in [his] employment rights or benefits. [His] Civil Service Status has not, and will not change, nor will [he] have a reduction in pay or benefits during this period." (Mem. Reassignment, ECF No. 12-2.) Plaintiff's property interest remained unaffected by the transfer. Thus, even assuming Plaintiff has a property interest to continued government employment, it is uncontested that he was still employed by the CNMI, albeit in a different position. Therefore, the motions are granted and Plaintiff's due process claim is DISMISSED.

For the first time in his opposition to the motions to dismiss, Plaintiff asserts that he has "a property interest in his Civil Service employment[.]" (Opp'n 8.) This property interest in civil service employment was not well plead in the complaint; Plaintiff made the conclusory and broad statement that he "has a constitutionally protected property interest in his continued employment as a public employee." (Compl. ¶ 52.)   A clear statement of the source of the property interest is relevant in that it provides a separate property interest for his claim of a procedural due process

violation. Without ruling on the adequacy of that theory, the Court nevertheless provides Plaintiff

leave to amend this claim.

> ii.     Plaintiff's retaliation claim does not allege an adverse employment
> action or causation.

To properly plead a § 1983 claim for retaliation of a plaintiff's exercise of First

Amendment rights, a plaintiff must allege the following: "(1) that he or she engaged in protected

speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech

was a 'substantial or motivating' factor for the adverse employment action." *Coszalter v. City of*

*Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (citations omitted). For the motions to dismiss,

Defendants concede that Plaintiff adequately alleged that he engaged in a constitutionally

protected activity; specifically, the exercise of his First Amendment rights to freedom of speech

and assembly within the context of his support for the governor's opponent. (Atalig's Mot.

Dismiss 18; CNMI's Mot. Dismiss 18; Castro's Mot. Dismiss 4.)

As for the second element, Plaintiff asserts that the transfer to the new job was an adverse

employment action. The Ninth Circuit has recognized that transfers may constitute an adverse

action. *See Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000); *St. John v. Emp't Dev. Dep't*,

642 F.2d 273, 274 (9th Cir. 1981); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987). But

such a determination is fact intensive and "should be judged from the perspective of a reasonable

person in the plaintiff's position, considering 'all the circumstances.'" *Burlington N. & Santa Fe*

*Ry. v. White*, 548 U.S. 53, 71 (2006) (citation omitted). In *Burlington*, the Supreme Court held

that a jury could reasonably conclude the transfer was an adverse employment action based on

evidence comparing the new position as "more arduous and dirtier" than the previous position,

which required more qualifications and had an indication of prestige. *Id.*

Here, a thorough review of the complaint reveals a lack of facts explaining why the new position of Director of Export, Importation, & Public Outreach is a demotion from the position of Director of Customs and Biosecurity. Plaintiff's categorization of the transfer as "a demotion and an adverse action" (Compl. ¶ 53) is conclusory. The closest comparison between the two positions is that Plaintiff contends the new position is "not a designated position under the civil service." (Compl. ¶ 25.) However, Plaintiff does not explain the ramifications of a position not designated under the civil service. Moreover, just because the new position is not designated, does not mean that Plaintiff was stripped of his civil service status, contrary to Plaintiff's assertion (Compl. ¶ 48.) In fact, Plaintiff acknowledges Atalig's intention "that the new position *will not result in any losses* or benefits, particularly with regard *to Plaintiff's protected civil service status*[.]" (Compl. ¶ 50 (emphasis added); *see also* Mem. Reassignment, ECF No. 12-2.) Therefore, the complaint fails to allege that Plaintiff suffered an adverse employment action for his retaliation claim.

Furthermore, the complaint does not allege sufficient facts to adequately plead that Plaintiff's speech was a substantial or motivating factor for the alleged adverse action. Plaintiff asserts that Atalig and Castro "retaliated against Plaintiff for exercising his constitutional right to freedom of association with a different political gubernatorial ticket than the incumbent governor." (Compl. ¶ 91.) His theory is that the reassignment "was done at the order of Defendant Castro, as the Chief of Staff to the incumbent Governor, to Plaintiff's then-supervisor, the Secretary of Finance[,]" Defendant Atalig. (*Id.* ¶ 75.) This theory implicates a conspiracy between Castro and Atalig; however, Plaintiff did not plead additional facts to support this claim such that he fails to meet the plausibility standard. *See Iqbal*, 556 U.S. at 680-81 (citing *Twombly*, 550 U.S.

at 551, 555) (recognizing that simply alleging the existence of a conspiracy is a legal conclusion not entitled to the assumption of truth). Although Plaintiff did provide text messages between his niece and Castro, wherein Castro stated his intent to fire Plaintiff (ECF No. 1-2), those text messages do not implicate the conspiracy between Castro *and Atalig*. As such, the complaint does not adequately plead the causation element required for the retaliation claim. Because Plaintiff did not plausibly allege causation and adverse employment action for his retaliation claim, the Court grants the motions and DISMISSES the retaliation claim but grants Plaintiff leave to amend.

### 3. Defendants' arguments for dismissal based on substitution and sovereign immunity fail.

Defendants argue that because the CNMI substituted in for Atalig in his personal capacity, the counts against Atalig are now counts against the CNMI and should thus be dismissed because of sovereign immunity.[4] (CNMI's Mot. Dismiss 23-24; Atalig's Mot. Dismiss 23.) However, as explained above, the proposed substitution was improper, and the CNMI cannot substitute in for Atalig. Therefore, the Court DENIES the motions to dismiss based on substitution and sovereign immunity.

### 4. The complaint does not allege sufficient facts supporting a demotion such that the political coercion claim is dismissed.

Plaintiff sued Atalig and Castro in their personal and professional capacities for violating 1 CMC § 8153, which states in relevant part:

---

[4] Although the official capacity Defendants raised the defense of qualified immunity in their briefing, (CNMI's Mot. Dismiss 21), they withdrew this argument at the hearing (Mins. 1.)

> In addition to, independent of, and irrespective of the criminal penalties prescribed by 1 CMC § 8152(b), any person who has been the victim of political coercion as described in 1 CMC § 8152(b) may recover from the perpetrator of the political coercion, full damages, both tangible and intangible, as a result of the coercion, attorneys fees, and court costs by means of a civil action.

1 CMC § 8153(a). 1 CMC § 8152(b) provides:

> It is an offense for any person to cause or threaten to be caused a demotion in rank or civil service classification or position, or a decrease in pay or any other benefit, or tenure of employment, of any government employee, with intent to discourage or encourage such government employee to support any candidate for public office, initiative or referendum, or political party.

Accordingly, to plausibly plead a violation of 1 CMC § 8153, a plaintiff must allege the following elements: 1) the defendant caused or threatened to be caused: a demotion in rank or civil service classification or position, or a decrease in pay or any other benefit, or tenure of employment; 2) the plaintiff is or was a government employee; and 3) the defendant acted with intent to discourage or encourage such government employee to support any candidate for public office, initiative or referendum, or political party. Castro concedes the last two elements but contests the first element as he claims that he never threatened Plaintiff. (Castro's Mot. Dismiss 10.) Before the Court can address the parties' dispute regarding threats, it must first determine whether Plaintiff even suffered "a demotion in rank or civil service classification or position, or a decrease in pay or any other benefit." For reasons explained above, Plaintiff did not sufficiently allege a demotion in rank or civil service classification or position. Further, Plaintiff acknowledges Atalig's intention "that the new position will not result in any losses or benefits, particularly with regard to Plaintiff's protected civil service status[.]" (Compl. ¶ 50; *see also* Mem. Reassignment, ECF No. 12-2.) Thus, Plaintiff's complaint fails to adequately plead facts for the first element of 1 CMC § 8153 such that Castro's motion to dismiss the political coercion claim is GRANTED. Bearing in

mind that Rule 15(a) dictates leave should be given freely "when justice so requires" and there is no indication of undue delay, bad faith or dilatory motive, undue delay, or futility of amendment, the Court grants Plaintiff leave to amend his original complaint.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court DENIES the CNMI Attorney General's motion for substitution (ECF No. 31). Further, the Court GRANTS in part, and denies in part, the three Defendants' motions to dismiss (ECF Nos. 30, 32, 33). In particular, the Court:

1. DENIES the motions based on substitution and sovereign immunity;

2. GRANTS the motions as to the 42 U.S.C. § 1983 claim for a procedural due process violation because Plaintiff did not identify the legal basis for his protected property interest or adequately plead a deprivation of that property interest;

3. GRANTS the motions as to the 42 U.S.C. § 1983 claim premised on retaliation for Plaintiff's failure to adequately plead an adverse employment action or causation; and

4. GRANTS Castro's motion to dismiss regarding the political coercion claim because Plaintiff did not sufficiently allege a demotion.

As such, the Court DISMISSES Plaintiff's complaint without prejudice. Plaintiff's first amended complaint is due within fourteen days of this decision and order.

**SO ORDERED** this 3rd day of March, 2023.

_____
RAMONA V. MANGLONA
Chief Judge